UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BAILEY CREDO WITT,

          Plaintiff,

v.

SNOHOMISH COUNTY WASHINGTON, et al.,

          Defendants.

Case No. C11-566-BAT

**ORDER GRANTING SUMMARY JUDGMENT**

Bailey Witt has brought a § 1983 action alleging Deputy Sheriff Traci Peckham used excessive force and unreasonably searched and seized him by tasing him after his arrest for burglary in the second degree. He also alleges Snohomish County, Sheriff John Lovick, and Captain Herb Oberg are liable in their official capacities for failing to instruct, supervise and control Deputy Peckham on using a taser and that the failure was a result of an official custom and practice of defendants.

Defendants move for summary judgment contending Deputy Peckham's conduct was necessary, lawful and reasonable. Defendants also contend Mr. Witt has not shown Sheriff Lovick and Captain Oberg personally participated in Mr. Witt's tasing, or that an official custom or practice caused the harm alleged. In other words, defendants Snohomish County, Lovick, and Oberg contend Mr. Witt's second amended complaint should be dismissed for failing to present

ORDER GRANTING SUMMARY JUDGMENT - 1

sufficient factual matter that states a claim to relief.

In response, Mr. Witt contends defendants violated their discovery obligations by failing to provide, before moving for summary judgment, Snohomish County Jail Nurse Karen Nygaard's declaration, all the information contained in Deputy Peckham's declaration, and all court records related to the criminal prosecution underlying this action. Mr. Witt argues the Court should enter a default judgment against defendants for these violations and award him a million dollars in damages and costs and fees. The Court has reviewed defendants' motion and Mr. Witt's responses and **ORDERS** that the motion is **GRANTED** and the matter **DISMISSED**.[1]

## BACKGROUND

*1. Mr. Witt's allegations—the second amended complaint*

Mr. Witt alleges on April 4, 2009, Deputy Sheriff Traci Peckham arrested him for burglary in the second degree, handcuffed him and "ordered [him] to walk off the Viking Village store property" to the Stanwood Police Department. Dkt. 26 at 3. *Id.* As Mr. Witt walked, he was tased by Deputy Peckham in the back and fell to the ground, even though he "made no attempt to escape, assault or otherwise resist Defendant TRACI PECKHAM or police while in custody." *Id.* at 4. At the police department, Mr. Witt alleges Deputy Peckham again tased him as his handcuffs were being removed even though he made no attempt to escape, assault or resist. *Id.*

Mr. Witt claims Deputy Peckham used excessive force and subjected him to an unreasonable search and seizure in violation of his Fourth Amendment rights. *Id.* at 5. Mr. Witt claims Deputy Peckham was acting "under the direction and control" of Captain Herb Oberg and

---

[1] The Court also **STRIKES** defendants' motion to stay mediation deadline (Dkt. 52) as **MOOT**.

Sheriff John Lovick, and that these two defendants are liable in their official capacities for failing to instruct, supervise and control Deputy Peckham on using a taser, and that the failure was a result of an official custom and practice of defendants. *Id.* at 6-9.

   2. *Defendant's motion for summary judgment*

On December 27, 2011, defendants moved for summary judgment contending Deputy Peckham's actions were lawful, reasonable and necessary. Defendants submitted numerous declarations averring the following. On April 4, 2009, at 4:34 a.m., Stanwood police officers and Snohomish County Sheriff's deputies went to Viking Village, a commercial building complex, to investigate suspicious circumstances. *See* Dkts. 45-48. Deputy Peckham avers she saw Mr. Witt running from the entrance of a business carrying a backpack. *See* Dkt. 48. She chased him, ordered him to stop but Mr. Witt disregarded her orders and ran across State Highway 532 into a wooded area. When Mr. Witt eventually poked his head out of the wooded area, Deputy Peckham ordered him to come out. Mr. Witt came out of the woods and despite orders to keep his hand out of his pockets, twice put his hands in his pockets as he approached Deputy Peckham. Concerned with this behavior, Deputy Peckham drew her taser, handcuffed Mr. Witt, and placed him in her patrol car. *Id.*

An investigation of the scene indicated Mr. Witt and an accomplice had attempted to break into Viking Village. Based on this evidence, Stanwood police officer Vincent Linnell went to Deputy Peckham's patrol car to take custody of Mr. Witt and escort him to the Stanwood Police Station which was one hundred yards away. *Id.* According to Officer Linnell, Mr. Witt repeatedly ignored orders to get out of patrol car. Dkt. 45. When Officer Linnell told Mr. Witt he would drag him out if he did not comply, Mr. Witt responded "Go ahead fucker." *Id.* After Officer Linnell dragged Mr. Witt out of the patrol car, they began to walk to the police station

with Deputy Peckham right behind Mr. Witt. As they walked, Mr. Witt grew more and more agitated, began calling Officer Linnell names and then suddenly turned and tried to head-butt Officer Linnell. *Id.* In response, Deputy Peckham tased Mr. Witt; Mr. Witt fell to the ground and did not appear injured. *Id.* Deputy Jay Schwartzmiller avers he saw Officer Linnell and Deputy Peckham escort Mr. Witt and that it appeared Mr. Witt was "resisting," "not complying and jerking his body back and forth," and that Mr. Witt "swung his head toward Officer Linnell's face." Dkt. 46.

At the Stanwood police station, Officer Linnell told Mr. Witt he was going to remove the hand cuffs, and ordered Mr. Witt to keep his hands at his sides. *Id.* Instead, as the officer began removing the cuffs, Mr. Witt suddenly raised his un-cuffed hand over his head in a position that would allow him to strike the officer. Seeing this, Deputy Peckham tased Mr. Witt believing he was going to hit Officer Linnell. Dkt. 48.

Because Mr. Witt complained of an injury to his leg, the police called an aid car. The Emergency Medical Technician (EMT) who examined Mr. Witt determined he did not need treatment at a hospital and Mr. Witt was thus transported to Snohomish County Jail. Dkt. 45. The Snohomish County Jail medical records show Mr. Witt was seen on April 4, 2009, and that he told the medical staff he ran from the police and jumped off a roof. The medical staff noted Mr. Witt's right heel was slightly swollen and bruised. Dkt. 43, ex. A. Mr. Witt was held at the Snohomish County Jail between April 4 and July 29, 2009, and made three requests of the medical staff: dental care for a wisdom tooth, testing for ADHD due to anxiety and panic, and copies of all medical and billing records. *Id.* ex. B.

*3. Mr. Witt's response to the summary judgment motion*

In his response to defendants' summary judgment motion, Mr. Witt (a) contends the

Court should deny the motion on the grounds an actual controversy exists because he claims Deputy Peckman used excessive force in tasing him; (b) lists the pleadings that were filed prior to the summary judgment motion; and (c) argues the defendants violated their discovery obligations by failing to disclose Snohomish County Jail nurse Karen Nygaard who gave a declaration in support of the summary judgment motion, failing to disclose the all of the information contained in Deputy Peckham's declaration, and failing to provide copies of pleadings of the burglary charge  underlying this § 1983 claim.  Dkt. 54.  Based on these discovery violations, Mr. Witt also moves the Court to enter an order of default against defendants and to award him one million dollars, costs and fees. *Id., see also* Dkt. 59-62.  (Mr. Witt's supplemental pleadings in support of this position.)

**DISCUSSION**

*1. Summary judgment standard*

The Court should grant summary judgment if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[2]  Once the moving party has satisfied this burden, the Court should grant summary judgment if the non-moving party fails to present "specific facts showing that there is a genuine issue for trial."[3]  The evidence submitted by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party.[4]

Ordinarily the Court may not weigh direct evidence presented by the nonmoving party against evidence presented by the moving party. *T.W. Elec. Serv., Inc. v. Pacific Elec.*

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[3] *Celotex Corp.*, 477 U.S. at 324.
[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

*Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Rather the Court must accept a non-moving party's direct evidence as true, *id.*, and generally may not disregard direct evidence on the basis that it is implausible or incredible. *See McLaughlin v. Liu*, 849 F.2d 1205, 1207–08 (9th Cir. 1988).

Nonetheless, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact" allowing a party to survive a summary judgment motion. *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While pro se litigants should be given more leeway,[5] they still must comply with the rules of procedure that govern other litigants.[6] Mindful that Mr. Witt is not a lawyer, the Court advised him:

> A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 describes what must be done to oppose a motion for summary judgment. A court will grant summary judgment when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. **If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.**

---

[5] *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).
[6] *King v. Atiyeh*, 814 F.2d 565, 567 (1987).

*Rand v. Rowland,* 154 F.3d 952, 962-63 (9th Cir. 1998) (emphasis added). Dkt. 51. Despite this advisement, Mr. Witt has failed to present specific facts that contradict the defendant's declarations and documents.

   *2. Claims against Snohomish County, Sheriff Lovick, and Captain Oberg*

Mr. Witt sues Snohomish County Sheriff Lovick and Captain Oberg in their official capacities. A claim against a Snohomish County defendant in his official capacity is considered a claim against Snohomish County itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *Bryan County Commissioners v. Brown*, 520 U.S. 397, 403 (1997). A municipality may be held liable under a claim brought under § 1983 only when the municipality inflicts an injury; it may not be held liable under a respondeat superior theory. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).

Here, defendants contend Mr. Witt failed to present any evidence that a custom, policy or procedure promulgated by Snohomish County was the driving force, or cause of his alleged constitutional injury. In essence, this argues Mr. Witt's amended complaint should be dismissed for failure to set forth facts to state a claim for relief. A review of Mr. Witt's amended complaint and pleadings filed before the summary judgment motion bears this out—the record shows Mr. Witt has presented nothing more than bald assertions that the County's policies, customs or procedures caused his injuries. *See* e.g. Dkt. 26 and Dkt. 35.

To survive dismissal, Mr. Witt must present sufficient factual matter that states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 566 U.S. 662, 129. S.Ct. 1937, 1950 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1949. (citations omitted).

Mr. Witt's second amended complaint leaves the Court with only conclusory statements about the liability of Snohomish County, Lovick, and Oberg and thus does not state a claim for relief. As the Supreme Court discussed in *Ashcroft*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" *Ashcroft*, 129 S.Ct. at 1949.

Mr. Witt's response to defendants' motion for summary judgment suffers from the same deficiency. Like the amended complaint, Mr. Witt's response does not contain any facts showing Snohomish County, Lovick, or Oberg are under liable under the *Monell* standard.

The amended complaint also alleges the acts or omissions of Lovick and Oberg constitute deliberate indifference to Mr. Witt's rights. Dkt. 26 at 9. A defendant may be held liable as a supervisor under § 1983 a plaintiff can show the defendant personally participated in the constitutional violation or if there is a causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). Mr. Witt has failed to make this showing. Other than making conclusory statements that these defendants "were aware of the serious immediate harm" due to "lack of training, regulations, discipline, policy, practices and customs of Snohomish County" and failed to "prevent harm," Mr. Witt has presented nothing showing that these defendants' personally participated in or proximately caused the alleged violations.

In sum, Mr. Witt's amended complaint and response to the summary judgment motion provide no factual basis that would allow the Court to draw a reasonable inference that Lovick or Oberg personally participated in or directed the alleged violations, or to conclude Snohomish County had a practice, policy or custom that caused the alleged constitutional violation. Accordingly, the Court dismisses the claims against these defendants.

### 3. *Claims against Deputy Traci Peckham*

Mr. Witt alleges Deputy Traci Peckham used excessive force and unreasonably searched and seized him by tasing him after his arrest for Burglary in the Second degree in violation of the Fourth Amendment. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). A claimed violation of 42 U.S.C. § 1983 for use of excessive force is rooted in the Fourth Amendment's protection against unreasonable searches and seizures. *Id*. at 394. Here, Mr. Witt claims Deputy Peckham used excessive force in two separate instances.

Mr. Witt first claims Deputy Peckham used excessive force by tasing him as he was being escorted through a parking lot to the police station. In support of the summary judgment motion defendants proffered that as Officer Linnell and Deputy Peckham escorted Mr. Witt through the parking lot, Mr. Witt grew increasingly agitated, began calling Officer Linnell names and then suddenly turned and tried to head-butt Officer Linnell. Defendants proffer that Deputy Peckham tased Mr. Witt only in response to these actions and that her use of the taser was thus reasonable, lawful and appropriate. In his opposition to the summary judgment motion, Mr. Witt presented no facts disputing these contentions. Rather, under his "Statement of Facts," Mr. Witt stated "Plaintiff claims the Defendant PECHAM use excessive force twice while he was

handcuffed at the time of the incident by discharging a firearm or used a weapon X26 into his back during an arrest." Dkt. 54 at 2. Mr. Witt did not support this bare allegation with any supporting facts or evidence. Factual assertions may be cognizable on motions for summary judgment if they go beyond conclusions and include facts that would be admissible in evidence, *see United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999), but as noted above, "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1996). Mr. Witt's response to the summary judgment is not sufficient to survive summary judgment as it fails to set forth detailed facts or other evidence to support his conclusory claim. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

While Mr. Witt's response is insufficient and failed to specifically point the Court to anything else in the record refuting defendants' claims, the Court, affording Mr. Witt the greatest leeway, has considered pleadings he filed prior to the summary judgment motion. Mr. Witt's previous pleadings, however, are also insufficient to fend off defendants' summary judgment motion. For instance, in a declaration filed on August 19, 2011, Mr. Witt describes the incident in the parking lot in the following way:

> I was still handcuffed behind my back and walk a distance escorted with Deputies behind my back and Deputy Linell holding my arm and sweatshirt. I was shocked with a X26 Taser in my back with handcuffs on and fell down and said "stop okay stop okay stop okay" stop tasering me around 6:25 am on April 4, 2009, Saturday morning. Defendant TRACI PECKHAM deployed the "firearm" X26 taser into my back suing excessive force while I was handcuffed twice. I was handcuffed was not resisting arrest, attempting to escape, or assaulting Deputy Linell.

Dkt. 23 at 3. Mr. Witt alleges he was not resisting arrest, attempting to escape, or assaulting deputy Linnell but these are conclusory allegations that are not supported by any factual data and

ORDER GRANTING SUMMARY JUDGMENT - 10

insufficient to withstand a summary judgment motion.

In sum, Mr. Witt has failed to present sufficient evidence establishing that a genuine issue of material fact exists over Deputy Peckham's use of the taser. The Court finds it is undisputed Deputy Peckham tased Mr. Witt only in response to Mr. Witt's attempt to head-butt Officer Linnell. The Court finds the deputy's use of the taser was reasonable in view of the circumstances at the scene of the event: Mr. Witt had just been arrested after fleeing, disregarded orders of officers, called Officer Linnell names and attempted to head-butt the officer. While Mr. Witt claims the force was excessive, he has not presented any facts to support this claim. Instead, he has presented nothing but conclusory statements that are insufficient to defeat a summary judgment motion.

Mr. Witt also claims Deputy Peckham used excessive force by tasing him at the Stanwood police station while his hand-cuffs were being removed by Officer Linnell. Defendants have proffered that at the Stanwood police station, Officer Linnell told Mr. Witt he was going to remove the hand cuffs, and ordered Mr. Witt to keep his hands at his sides. Instead, as the officer began removing the cuffs, Mr. Witt suddenly raised his un-cuffed hand over his head in a position that would allow him to strike the officer. Seeing this, Deputy Peckham tased Mr. Witt, believing he was going to hit Officer Linnell. As noted above, Mr. Witt presented no facts in his opposition to the summary judgment motion disputing defendants' proffer. Additionally in his declaration of August 19, 2011, Mr. Witt does not contest he was ordered to keep his hands at his sides as the cuffs were being removed. Rather he admits he was tased only after he raised his hand up to the wall and that he was "shock again for disobedience." Dkt. 23 at 3-4.

The Court finds Mr. Witt has failed to present sufficient evidence establishing that a

genuine issue of material fact exists over Deputy Peckham's use of the taser at the Stanwood police station. Mr. Witt does not dispute Deputy Peckham tased Mr. Witt only when Mr. Witt raised his arm instead of keeping it at his side as ordered. The Court finds the deputy's belief Mr. Witt was about to hit Officer Linnell was reasonable and her use of the taser in response was also reasonable in view of all of the circumstances of the event. Although Mr. Witt claims the deputy's use of the taser was excessive, he has presented no facts to support the claim other than repeating the same conclusory statements made earlier that he was "not resisting arrest, attempting to escape or assaulting police." Dkt. 23 at 3. As these conclusory statements are insufficient to defeat the summary judgment motion the claims against Deputy Peckham are dismissed.

*4. Discovery violations*

Mr. Witt argues summary judgment should be denied because defendants violated their discovery obligations. Dkt. 58. This argument lacks merit. The alleged discovery violations did not prevent Mr. Witt from presenting facts to rebut defendants' proffer that Mr. Witt was tased only in response to his attempt to head-butt Officer Linnell, and only after he raised an un-cuffed arm, as if to hit Officer Linnell, and after he was specifically ordered to keep his arm at his sides. The facts pertaining to both of these incidences are within Mr. Witt's own personal knowledge. The purported discovery violations thus have nothing to do with Mr. Witt's failure to state facts in opposition to the summary judgment motion, and are not so egregious, in any event, that an order of default should be entered against defendants.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment (Dkt. 42) and **DISMISSES** this matter. The Court also **STRIKES** defendants' motion

to stay mediation deadline (Dkt. 52) as **MOOT**. And finally, the Court **DENIES** plaintiff's motion for default judgment. The Clerk of Court is directed to send a copy of this Order to the parties.

DATED this 3rd day of February, 2012.

BRIAN A. TSUCHIDA
United States Magistrate Judge